Minshall, J.
After a careful examination of this instrument we are satisfied that it can not take effect as a will, by reason of the indefinite and uncertain character of its provisions : Thus as to the fourth item, it is uncertain, in the first place, whether it disposes of anything. It is not dispositive in terms; it simply directs a mode of dividing what is assumed to have been disposed of — a disposition not, however, found in the will. If there weré dispositive words, the subject of the bequest might, by a rule of construction, be held to have been bequeathed equally to all of the class — children and grandchildren alike. But this is contrary to natural affection and could hardly have been intended. Indeed it is probable, from other portions of the writing, that by the use of the words “ my heirs,” he meant his own children then living, that is, his two *468 sons Jesse and George, or else that he meant, these two, and the children of his deceased daughter, Sarah Jane Weeks, included. He hardly intended to include the son of his deceased son Caleb, as that would make him the favorite object of his bounty, contrary to what seems, from the whole instrument and the manner in which he is provided for in the fifth item, to have been the fact. But such is the technical effect of the language employed, and if this item be regarded as dispositive, then this grandson would take under it equally with the sons of the testator, and also the provision made for him in the fifth item.
Again it is uncertain what the testator meant by “the final settlement ” of his. estate as used in the sixth item. One-third of this he gives to the children of his deceased daughter Sarah Jane Weeks. By the statute it would mean all of the testator’s estate after the payment of debts (§ 6090); for the amount $900, that George is required to pay for the'farm (found also to bo its full value), is to be brought into this final settlement. So that if this construction were adopted, these children would take one-third of his entire estate after the payment of debts; and his two sons (or Jesse and the heirs of George), would, after the payment of the legacy of $300 to Caleb’s son, take each two-ninths, and the latter would take a like part with the legacy added. But this is not reasonable. Or, he may have intended, what would remain of his estate, after paying debts, the legacy to Caleb’s son, and the making of the division of the .bonds as provided in the fourth item. But this construction would be involved in all the obscurity that grows out' of the indefinite and uncertain character of the language employed in that item.
As to the third item, it seems certain that he intended George to have the farm on paying $900 for it; but it is not certain that he intended this disposition to take effect, whether the other dispositions, be intended to make, took effect or not. Indeed, in the light of the fact that the amount required to be paid is the full value of the farm, it is most likely he did not.
The extraneous circumstances incorporated in the finding of the court, throw but little, if any light, upon the obscurities of this will; and it is doubtful whether these could be relieved *469 by any conceivable state of circumstances. Thus, when it is observed that the legacy given to the son of his deceased son Caleb, is to be divided among his other heirs, if not called for in three years, we perceive that the fact of the absence o'f this son was present in the mind of the testator; and this furnishes a somewhat forcible reason for saying that the testator did not intend that he should participate in the division of the bonds; for there is no room for saying that he intended that the division should be delayed until this grandson, “supposed to be somewhere in the west, but place not known,” should return. Then again, the devise of a third of his estate, on final settlement, to the children of his deceased daughter, supplies a strong inference, that he intended to divide the whole of his estate, after the payment of debts and the legacy to Frank, among his two sons then living, and the children of his deceased daughter, giving to the latter as a class, and to his two sons, each a third, particularly as the amount George is required to pay for the farm is its full value, and is to be brought into the fund for final distribution. These considerations are plausible, but if the fourth item were otherwise capable of an intelligible construction, they would hardly be sufficient to warrant a court in excluding one from a class to which, in its technical signification, he belongs.
• Without pursuing the matter, further, we think sufficient has been said to indicate the obscurity in which each item of this will, when considered in connection with its other parts, is involved, and that no construction can be given it, as a whole, for which more can be claimed than that it is a clever guess at the probable intention of the testator. But this is not enough to warrant any particular construction claimed for a will; for, as observed by Mr. Jarman, conjecture is not permitted to supply what the testator has failed to indicate; and if, after every endeavor, the judicial expositor “ finds himself unable, in regard to any particular fact, to penetrate through the obscurity in which the testator has involved his intention, the failure of the intended disposition is the inevitable consequence.” 1 Jarm. Wills, 356*. And further on, the same author observes, that, “ To the validity of every disposition, as well of personal as of *470 real estate, it is requisite that there be a definite subject and object; and uncertainty on either of these particulars is fatal.” Now, in this will, there is first uncertainty, in the fourth item, as to the objects — the persons intended to take, and also, whether it was intended to dispose of anything; and, in the sixth item, there is uncertainty as to the subject-matter devised — as to what shall constitute the fund, of which the children there named were to take a third on “ the final settlement ” of his estate; and these uncertainties, combined with the apparent, but unexpressed purpose, to exclude the son of his deceased son Caleb from taking any part of his estate, other than th.e conditional legacy given him in the fifth item, involve the entire scheme of the instrument in doubt and uncertainty. And, though the privilege of making á will is one highly respected by the law, yet, as the law itself makes a just and equitable disposition of the property of an intestate among the natural objects of his bounty, it should prevail over the provisions of any attempted disposition, that are so obscure that the general scheme and purpose of the testator cannot be ascertained with any reasonable certainty.

Judgment accordingly.